UNITED STATES of America

v.

Dennis K. RISSMILLER.

No. 4:CR–94–058.

United States District Court, M.D. Pennsylvania.

Nov. 9, 1994.

Dennis C. Pfannenschmidt, U.S. Attorney's Office, Harrisburg, PA, for United States.

Douglas B. Chester, Spring Mills, PA, for Dennis K. Rissmiller.

*OPINION*

MUIR, District Judge.

I.   Introduction.

On March 31, 1994, a Grand Jury for the Middle District of Pennsylvania, sitting in

Williamsport, returned a three-count indictment charging Dennis K. Rissmiller with possession of firearms by a convicted felon (Count I), using and carrying a firearm during and in relation to a drug trafficking crime (Count II), and possession of an unregistered firearm (Count III). On May 2, 1994, Rissmiller entered a plea of guilty to Count I of the indictment. We ordered a presentence investigation and scheduled a presentence conference.

Rissmiller filed objections to the presentence report. Pursuant to Rissmiller's objections, the Probation Office filed two addenda, modifying the presentence report. Following the filing of the second addendum, Rissmiller filed a second set of objections, entitled "Defendant's Response to Second Amended Pre–Sentence Report." At the presentence conference on July 25, 1994, the Court set a hearing on disputed issues of fact. The Court also established a briefing schedule.

Rissmiller argues that the Japanese double barrelled signal pistol found at his parents' Port Matilda residence does not qualify as a firearm under 26 U.S.C. § 5845(a) for purposes of determining his sentence and it was not in his possession.

Rissmiller objects to a 3 level increase for the possession of nine firearms. Rissmiller contends that the increase in the offense level should be 1 because he was not in possession of the six firearms stored at the Port Matilda residence.

Rissmiller further contends that the "Armed Career Criminal" provisions of the United States Sentencing Guidelines should not be applied to him for the following reasons: the Japanese double barrelled signal pistol does not fall within the purview of 26 U.S.C. § 5845(a); it was not in his possession; and that his 1974 conviction was not a "serious drug offense" as defined in 18 U.S.C. § 924(e). Rissmiller also claims that his possession of firearms did not have any connection with his marijuana trafficking.

On October 17, 1994, we held a hearing on Rissmiller's objections to his presentence report. The following are the Court's findings of fact, discussion, and conclusions of law on the issues raised.

## II. Findings of Fact.

1. On March 1, 1974 Dennis Rissmiller was arrested by the Pennsylvania State Police–State College on charges of Possession of LSD with intent to deliver, Possession of LSD, and Possession of Marijuana. (Undisputed, hereinafter "U")

2. On September 23, 1974, Rissmiller was convicted of possession of LSD with intent to deliver, possession of LSD, and possession of marijuana in the Court of Common Pleas of Centre County, Pennsylvania and received a sentence of two years probation.

3. On July 19, 1977 Dennis Rissmiller was arrested by the Office of the Attorney General, Bureau of Narcotics Investigation on charges of Possession of Cocaine with intent to deliver, Delivery of Cocaine, Possession of Cocaine, and Criminal Conspiracy. (U)

4. On May 12, 1978 Rissmiller was convicted of Delivery of Cocaine in the Court of Common Pleas of Centre County, Pennsylvania and received a sentence of six (6) to twenty three (23) months imprisonment in the Centre County Prison. (U)

5. On April 9, 1982 Rissmiller was arrested by the Ferguson Township Police on charges of Driving Under the Influence of Alcohol. (U)

6. On July 23, 1982 Rissmiller was convicted of Driving Under the Influence of Alcohol in the Court of Common Pleas of Centre County, Pennsylvania and received a sentence of twelve (12) months probation. (U)

7. On April 25, 1985 Rissmiller was arrested by the Pennsylvania State Police–Philipsburg on charges of Possession of a Prohibited Offensive Weapon (sawed-off shotgun), Delivery of Cocaine, Possession of Cocaine, Delivery of Marijuana, Possession with intent to deliver Marijuana, Possession of Marijuana, and Criminal Conspiracy (two counts). (U)

8. On October 10, 1985, while released on bail for the arrest described in paragraph 7 above, Rissmiller was arrested by the Penn-

sylvania State Police–Philipsburg on charges of Driving Under the Influence of Alcohol. (U)

9. On December 16, 1985 Rissmiller was convicted of Driving Under the Influence of Alcohol in the Court of Common Pleas of Centre County, Pennsylvania and received a sentence of one (1) to twelve (12) months imprisonment in the Centre County Prison. (U)

10. On August 5, 1986 Rissmiller was convicted of Possession of a Prohibited Offensive Weapon (sawed-off shotgun), Delivery of Cocaine, Possession with intent to deliver Marijuana, and Criminal Conspiracy in the Court of Common Pleas of Centre County, Pennsylvania and received a sentence of eighteen (18) months to five (5) years in a State Correctional Facility. (U)

11. On March 31, 1988, Rissmiller was released on parole after being advised by his state parole officer that he was not permitted to possess firearms while on parole. (U)

12. On April 4, 1989, while on parole for the conviction described in paragraph 10 above, Rissmiller was arrested by the Pennsylvania State Police–Philipsburg on charges of Driving Under the Influence of Alcohol. (U)

13. On July 21, 1989 Rissmiller was convicted of Driving Under the Influence of Alcohol in the Court of Common Pleas of Centre County, Pennsylvania and received a sentence of three (3) to twenty three and one-half (23½) months imprisonment in the Centre County Prison. (U)

14. Rissmiller was re-released from imprisonment on September 5, 1989 and continued on parole until its expiration on July 22, 1991. (U)

15. On July 22, 1991, Kathie Rissmiller, the Defendant's mother, at the Defendant's request, telephoned the Centre County parole office to inquire whether the Defendant was allowed to hunt with guns and she testified that she was told he was allowed to hunt with guns.

16. On July 23, 1991, Rissmiller was telephonically advised by his state parole officer that he would have to check with state and federal authorities to determine his ability to possess firearms legally.

17. After that date Rissmiller did not check with any state or federal authorities to ascertain his ability to possess firearms.

18. Rissmiller was informed by his state parole officer that he was not entitled to possess firearms while on parole or probation, and he signed a parole document to that effect.

19. Rissmiller was not told by anyone that he would be in violation of federal law if he ever again possessed a firearm.

20. No one ever explained the legal definition of possession to Rissmiller, or that he could be considered "in possession" of firearms stored at his parents' house in Port Matilda if he had access to that house.

21. The parole documents signed by Rissmiller do not mention that possession of firearms by a convicted felon is a violation of federal law.

22. After his release on parole, Rissmiller resided at 1752 North Atherton Street # 135, State College, PA, a trailer owned by Margaret Hillard.

23. Rissmiller spent time at his parents' residence at 240 Mountain Road, Port Matilda, PA, where he was constructing a separate residence on the same property.

24. For approximately six (6) months of each year while his parents resided in Florida, Rissmiller acted as the custodian of their residence and had full access to it. (U)

25. On November 10, 1993, a confidential informant made a controlled purchase of one ounce of marijuana from Rissmiller at the trailer in State College for $205 in cash. The transaction took place in the master bedroom area of the trailer where firearms were visible.

26. On November 19, 1993 the same confidential informant purchased one-half ounce of marijuana from Rissmiller at the trailer in State College for $115 in cash. The transaction took place in the kitchen area of the trailer from which firearms in the bedroom were visible.

27. On December 14, 1993 the same confidential informant went to the trailer in State College and met with Rissmiller. During their conversation, Rissmiller stated that he had a Japanese double barrelled handgun and that he would sell it for $1,000.

28. On December 16, 1993, Rissmiller purchased a .22 caliber rifle at Dershem's Sporting Goods in State College. In order to complete the purchase, Rissmiller signed a form in which he wrote "NO" in answer to the question of whether he had ever been convicted of a crime for which the maximum punishment could have exceeded one year. Above his signature on the form is a certification that advised Rissmiller that a "YES" answer to that question would disqualify him from purchasing or possessing firearms.

29. On February 1, 1994 the same confidential informant purchased one-half ounce of marijuana from Rissmiller at the trailer in State College for $115 in cash. The transaction took place in the bedroom area of the trailer where firearms were clearly visible. (U)

30. On February 9, 1994 the same confidential informant purchased one-quarter ounce of marijuana from Rissmiller at the trailer in State College for $60 in cash. The transaction took place in the living room area of the trailer and during the course of the conversation, Rissmiller acknowledged possession of an SKS assault rifle at his parents' residence. (U)

31. On March 1, 1994 a federal search warrant was served on the trailer in State College. Recovered from the bedroom area of the trailer were a Marlin Model 25 .22 caliber rifle S/N 12656085, a Marlin model 39m .22 caliber rifle S/N 261623634, a German military model 98 8mm Mauser S/N 3453, approximately one half pound of marijuana, and assorted ammunition including .22 caliber. (U)

32. During the course of the search of the trailer, Rissmiller was placed under arrest by state authorities on drug charges. He was read his Miranda warnings, which he waived, and stated that two of the three firearms found belonged to him. He further stated that he had purchased the third rifle at Der-shem's Sporting Goods in State College in December, 1993, as a gift for Margaret Hillard.

33. The firearms and the marijuana were both stored in the master bedroom area of the trailer.

34. The firearms in the trailer were stored unloaded, and the ammunition was not stored in clips.

35. The firearms were not used to protect the marijuana or to facilitate any drug crimes.

36. The proximity of the firearms to the marijuana was coincidental because of the layout and limited size of the trailer and not because of any deliberate intention to connect the objects.

37. The visibility of the firearms during the drug transactions was not due to any deliberate intention to facilitate drug transactions.

38. On March 1, 1994, consent searches were conducted at both of the structures at 240 Mountain Road, Port Matilda, Pennsylvania. Consent to search the residence of Rissmiller's parents was telephonically obtained from both parents. In giving his consent, Mr. Edward Rissmiller stated that he did not have any handguns at his Port Matilda residence and specified what long guns belonged to him, including a shotgun.

39. Recovered from Rissmiller's parents' residence were a Waffenfabrik model 1909 Mauser rifle S/N 2574, a Chinese SKS 7.65 X 39 semi-automatic rifle S/N 8908262, a High Standard Sentinel .22 caliber revolver S/N 570392, a H & R model 732 .32 caliber revolver S/N AR9496, a Savage model 99DL .308 Winchester rifle S/N B145598, and a double barrel .12 gauge handgun. The firearms specified by Mr. Edward Rissmiller as belonging to him were not taken or inventoried. (U)

40. The Japanese double barrelled handgun is a signal pistol capable of being concealed on the person from which a shot other than a flare can be discharged and has a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell.

41. The search of the unfinished residence of Rissmiller at the Mountain Road address was authorized by Defendant Rissmiller. This residence which was under construction had a stove, refrigerator, propane gas service, some carpeting, and electricity. Found in the unfinished residence was a case (1,000 round) of ammunition for the SKS assault rifle.

42. The Japanese double barrelled signal pistol was stored at, and seized from, the 240 Mountain Road address, and not from the trailer in which Rissmiller lived.

43. The offense to which Rissmiller pled guilty involved no violence or threat of violence to anyone.

### III. Discussion.

■ Rissmiller pled guilty to possession of firearms by a convicted felon, under 18 U.S.C. § 922(g). Because Rissmiller has 3 prior serious drug convictions, he is subject to an enhanced penalty under 18 U.S.C. § 924(e) and this makes him an Armed Career Criminal. This fact of being an Armed Career Criminal requires that U.S.S.G. § 4B1.4 be used to calculate his offense level. In the presentence report, the Probation Officer calculated Rissmiller's base offense level as 26 under U.S.S.G. § 2K2.1(a)(1) without consideration of U.S.S.G. § 4B1.4. The Probation Officer then applied U.S.S.G. § 4B1.4 and determined that Rissmiller had a base offense level of 34. Because U.S.S.G. § 4B1.4 trumps U.S.S.G. § 2K2.1, Rissmiller's objections to the offense level determined under U.S.S.G. § 2K2.1 are irrelevant. Consequently, Rissmiller's first two objections pertaining to the application of U.S.S.G. § 2K2.1, are rendered moot. However, in the interest of a clear record, we will address those objections insofar as they may be relevant to a potential motion for downward departure.

■ Rissmiller contends that his base offense level should be 24 pursuant to U.S.S.G. § 2K2.1(a)(2) because he was not in possession of the Japanese double barrelled signal pistol found at his parents' Port Matilda residence and it does not qualify as a firearm under 26 U.S.C. § 5845(a).

Section 2K2.1(a)(1) states that a base offense level of 26 applies if the defendant

... had at least two prior felony convictions of either a crime of violence or a controlled substance offense, and the instant offense involved a firearm listed in 26 U.S.C. § 5845(a)....

Section 2K2.1(a)(2) states that a base offense level of 24 applies if the defendant

... had at least two prior felony convictions of either a crime of violence or a controlled substance offense....

The presentence report states that Rissmiller had at least two prior felony convictions for controlled substance offenses. The presentence report indicates that the current offense involved a firearm, the Japanese double barrelled signal pistol, listed in 26 U.S.C. § 5845(a). Rissmiller argues that the Japanese double barrelled signal pistol does not fall within the purview of 26 U.S.C. § 5845(a). However, we need not reach that issue because we are of the view that the pistol was not in Rissmiller's possession and it was not used in connection with drug trafficking for purposes of U.S.S.G. § 2K2.1.

Rissmiller possessed the 3 firearms located at Margaret Hillard's trailer and had access to them at all times. However, the firearms located at the Port Matilda residence fall into a different category for purposes of determining enhancement under the sentencing guidelines. Rissmiller did not have sufficient dominion and control over these firearms to warrant a conclusion that they were in his possession.

The Japanese double barrelled signal pistol was stored at, and seized from, the Port Matilda residence, and not from Margaret Hillard's trailer in which Rissmiller lived. The distance from the trailer to the Port Matilda residence is approximately 13 miles. The fact that Rissmiller had access to a home 13 miles away from his residence in which firearms were stored should not be counted against him. The Government has not proven that a temporal and spatial relationship existed between the firearms, the drug trafficking, and Rissmiller. *See* United States vs. Eastland, 989 F.2d 760 (5th Cir.1993).

In light of the distance between Rissmiller's residence and the guns located at the Port Matilda residence, it would be fundamentally unfair to hold Rissmiller in possession of the firearms stored there. Rissmiller was only in possession of the 3 firearms immediately available to him. Thus, the Japanese double barrelled signal pistol was not in Rissmiller's possession for purposes of the sentencing guideline enhancement under U.S.S.G. § 2K2.1(a)(1). Therefore, the correct base offense level pursuant to U.S.S.G. 2K2.1(a)(2) is 24 before consideration of the Armed Career Criminal Act.

■ Rissmiller next objects to a 3 level increase for possession of 9 firearms pursuant to U.S.S.G. 2K2.1(b)(1)(C). Rissmiller argues that he was only in possession of the 3 firearms found at the trailer in which he lived and not those found at his parents' home in Port Matilda. He contends that the increase in the base offense level should be 1 pursuant to U.S.S.G. 2K2.1(b)(1)(A). As previously discussed, we are of the view that Rissmiller was only in possession of the 3 firearms found at the trailer. Therefore, the correct increase in offense level is 1 pursuant to U.S.S.G. 2K2.1(b)(1)(A).

■ In accordance with U.S.S.G. § 4B1.4(a), Rissmiller is an Armed Career Criminal because he is subject to an enhanced penalty under the provision of 18 U.S.C. § 924(e). Rissmiller contends that he should not be subject to the enhanced penalties of the Armed Career Criminal Act, 18 U.S.C. § 924(e).

18 U.S.C. § 924(e) subjects a person who violates 18 U.S.C. § 922(g) and has three previous convictions for a serious drug offense to a term of imprisonment of not less than 15 years. Rissmiller falls within this statute because he has three previous convictions for serious drug offenses.

Rissmiller argues that his 1974 conviction is not a "serious drug offense" as defined in the statute. Rissmiller claims that the documentary records for his 1974 conviction show that he was convicted of one misdemeanor count, given a suspended sentence, and placed on probation. Rissmiller claims he was not convicted of a felony. However, the

certified records indicate that Rissmiller pled guilty to three charges, one of which was possession of LSD with intent to deliver in violation of 35 Pa.S. § 780–113(a)(30).

Section 924(e) defines the phrase "serious drug offense" as an offense that under federal or state law would carry a maximum term of 10 years or more. Under federal law, possession with intent to deliver LSD carries a maximum term of 20 years. See 21 U.S.C. § 841. Under Pennsylvania law, the same offense is a felony punishable by imprisonment for up to 15 years. See 35 Pa.S. § 780–113(f)(1). Either law would support a finding that Rissmiller's 1974 conviction constitutes a "serious drug offense," and requires Rissmiller's treatment as an Armed Career Criminal. We are of the view that Rissmiller is subject to an enhanced penalty under 18 U.S.C. § 924(e) and therefore is an Armed Career Criminal.

As an Armed Career Criminal, the sentencing guidelines under U.S.S.G. § 4B1.4 calculate the offense level as the greater of (1) the level of the underlying offense; or (2) the level for a career offender; or (3) 34 if the firearm or ammunition was used or possessed in connection with a controlled substance offense; or (4) 33 otherwise. The career offender provisions do not apply to this case. The probation office determined that Rissmiller's offense level was 34 pursuant to U.S.S.G. § 4B1.4(b)(3)(A).

■ Rissmiller argues, in the event he is subject to the Armed Career Criminal Act, his offense level should be 33 pursuant to U.S.S.G. § 4B1.4(b)(3)(B) because the firearms and ammunition at the trailer residence were merely coincidental to his marijuana trafficking and were not used to facilitate any drug trafficking.

The firearms at the trailer were not kept loaded, they were not carried, used, and they were not employed to facilitate any crime. Rissmiller never threatened anyone with their use and never injured anyone with them. The visibility of the firearms during the drug transactions was merely coincidental and due to the layout of the trailer and played no part in the crimes. We are of the view that the circumstances surrounding the

presence of the firearms at the trailer suggest that they were not used in connection with Rissmiller's marijuana trafficking. Therefore, the correct offense level is 33 pursuant to U.S.S.G. § 4B1.4(b)(3)(B).

## IV. Conclusions of Law.

1. Rissmiller's violation of 18 U.S.C. § 922(g) involved possession of the three (3) firearms located at the trailer in State College.

2. The three (3) firearms at the trailer in State College were not possessed by Rissmiller in connection with a controlled substance offense or to facilitate any crime.

3. Rissmiller was not in possession of the six (6) firearms located at his parents' residence in Port Matilda.

4. Rissmiller had at least 3 prior convictions for serious drug offenses as that term is defined in 18 U.S.C. § 924(e).

5. Rissmiller is an Armed Career Criminal as that term is defined in 18 U.S.C. § 924(e)(1).

6. The initial offense level applicable in this case is 33 as set forth in U.S.S.G. § 4B1.4(b)(3)(B).

7. With an adjustment for acceptance of responsibility as set forth in U.S.S.G. § 3E1.1(b), the adjusted offense level is 30.

8. The Criminal History Category applicable to Rissmiller is V pursuant to U.S.S.G. § 4B1.4(c)(1).

9. A violation of 18 U.S.C. § 924(e)(1) has a statutorily required mandatory minimum of 15 years imprisonment.

10. The guideline imprisonment range is 180–188 months pursuant to U.S.S.G. § 5G1.1(c)(2).

11. The guideline fine range is $15,000 to $150,000 pursuant to U.S.S.G. § 5E1.2(c)(3).

An appropriate order will be entered.